IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Raymond Bond, *On behalf of himself and those similarly situated*, Plaintiff, v. Carter Express, Inc.; Defendants. | Case No. Judge Magistrate Judge Jury Trial Demanded |

CLASS AND COLLECTIVE ACTION COMPLAINT

1. Raymond Bond (hereinafter, "Bond"), on behalf of himself and similarly situated individuals, brings this action against Defendant Carter Express, Inc. ("Carter Express" or "Defendant"). Bond seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Bond and similarly situated individuals overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, *et seq.*, the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15 (the "PPA"), per Ohio Rev. Code § 2307.60, and other relevant state laws.

2. Carter Express is a transportation and logistics company with several warehouses and trucking cargo yards across several states.

3. Defendants employ Plaintiff and other similarly situated employees as "yard drivers."

4. Defendants have repeatedly and willfully violated the FLSA, the OMFWSA, and Ohio PPA by failing to pay yard drivers 1.5 x their regular rate of pay for all hours in excess of 40 hours in any one workweek.

5. Bond seeks to represent other yard drivers who have worked at Defendants' terminals.

6. Bond brings this action on behalf of himself and similarly situated current and former yard drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy Defendants' FLSA violations.

7. Bond also brings this action on behalf of himself and similarly situated current and former yard drivers, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the OMFWSA, the PPA, Ohio Rev. Code § 2307.60, and other relevant state laws.

## Jurisdiction and Venue

8. Per 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Bond's FLSA claims.

9. Additionally, venue in this Court is proper under 28 U.S.C. § 1391(b) because Carter Express resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Raymond Bond**

10. Plaintiff Raymond Bond is a resident of Ohio.

11. Bond is an "employee" of the Defendants as defined in the FLSA, the OMFWSA, and PPA.

12. Bond has given written consent to join this action.

**Defendants**

13. Bond seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who act directly or indirectly in the interest of Carter Express, Inc. and/or the Carter Express business and brand in the interest of Carter Express in relation to any employee. Discovery is likely to reveal the identities of all of the individuals and entities that make up Bond's and similarly situated employees' "employer" under the FLSA and state law.

14. Defendant Carter Express, Inc. is an Indiana corporation authorized to do business under the laws of the state of Ohio, with its principal place of business at 4020 W. 73rd Street, Anderson, Indiana, 46011.

15. Upon information and belief, Carter Express owns and operates terminals in at least the states of Alabama, Arkansas, Indiana, Kentucky, Michigan, Ohio, Tennessee, and Texas, in addition to Mexico.

16. Carter Express owns and operates a terminal in Vandalia, Ohio.

17. Carter Express owns and operates a terminal in Tanner, Alabama.

18. Carter Express, Inc. is the entity that appears on Bond's paystubs for work he completes for Defendants.

19. Carter Express may command where, when, and how much labor is performed by the yard drivers at Carter Express' terminals.

3

20. Carter Express has substantial control over Bond and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21. Upon information and belief, Carter Express applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all its locations, including policies, practices, and procedures relating to payment of overtime wages for yard drivers.

22. Carter Express has direct and indirect control of the terms and conditions of Bond's work and the work of similarly situated employees.

23. At all relevant times, Carter Express maintains control, oversight, and direction over Bond and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24. Carter Express is an "employer" of Bond and similarly situated employees as that term is defined by the FLSA.

25. At all relevant times, Carter Express has been and continues to be an "enterprise engaged in commerce" within the meaning of the phrase as used in the FLSA.

26. Carter Express is an "employer" of Bond and similarly situated employees as that term is defined by the PPA.

27. Carter Express's gross revenue exceeds $500,000 per year.

28. Upon information and belief, Carter Express owns, operates, and controls other entities and/or corporations that also comprise part of Carter Express' enterprise and qualify as "employers" of Bond and the yard drivers at Carter Express' terminals as that term is defined by the FLSA.

29. Upon information and belief, there are other entities within Carter Express' enterprise who qualify as "employers" to a number of members of the putative FLSA collective class.

30. The identities of these additional defendants should be revealed as discovery progresses and can be named at that time.

31. Upon information and belief, there are individuals who also qualify as "employers" of Bond and the yard drivers at Carter Express' terminals as the FLSA defines that term.

32. Upon information and belief, Chief Executive Officer and President Jessica Paugh Warnke, Chief Operating Officer Nick Geesaman, and Vice President of Operations Agustin Villegas may qualify as "employers" of Bond and the delivery drivers at Carter Express' terminals as that term is defined by the FLSA and Ohio law.

33. The identities of these additional defendants should be revealed as discovery progresses and can be named at that time.

FACTS

**Class-wide Factual Allegations**

34. During all relevant times, Carter Express has operated terminals Alabama, Arkansas, Indiana, Kentucky, Michigan, Ohio, Tennessee, and Texas.

35. Carter Express's warehouses and trucking cargo yards are known as "terminals" or "crossdocks."

36. Carter Express employs individuals to work at their terminals as "yard drivers."

37. Bond, and the similarly situated persons Bond seeks to represent, are current and former yard drivers at Carter Express' terminals.

38. All yard drivers employed at Carter Express's terminals over the last three years performed essentially the same job duties.

39. Yard drivers operate a vehicle known as a "shunt truck" to move semi-trailers and containers around Carter Express's terminals.

40. These yard drivers perform their roles exclusively on-site at Defendants' terminals.

41. Defendants' yard drivers are not subject to the Motor Carrier Act exemption to the FLSA.

42. Defendants' yard drivers are non-exempt workers afforded protections provided by the FLSA.

43. Accordingly, Defendants are required to pay their yard drivers 1.5x their regular rate for all hours worked over 40 hours in a given workweek.

44. Bond and similarly situated yard drivers consistently worked in excess of 40 hours in given workweeks.

45. Bond and similarly situated yard drivers were not paid 1.5x their regular rate for all hours they worked in excess of 40 hours in any given workweek.

46. As a result, they were deprived of overtime wages guaranteed to them by the FLSA and Ohio law.

47. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not operate shunt trucks over public highways.

48. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not cross any state lines while operating shunt trucks.

49. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not ride in or on motor vehicles being operated in interstate commerce as part of their jobs.

50. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not plan or build loads for motor vehicles that operate on the public highways in interstate or foreign commerce.

51. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not place, distribute, or secure any pieces of freight on motor vehicles that operate on the public highways in interstate or foreign commerce.

52. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not load motor vehicles so that they may be safely operated on the highways of the country.

53. As part of their job duties, Bond and similarly situated yard drivers at Carter Express's terminals do not inspect or instruct how motor vehicles were loaded.

54. Bond and similarly situated yard drivers at Carter Express's terminals are not exempt from the FLSA's overtime wage provisions.

### Plaintiff's Individual Factual Allegations

55. Bond has worked as a yard driver for Carter Express for nearly a decade.

56. Bond began working for Carter Express as a yard driver in late 2013 at the terminal located in Vandalia, Ohio.

57. In August 2021, Bond was temporarily relocated to Carter Express's terminal located in Tanner, Alabama.

58. Bond worked as a yard driver at Carter Express's Alabama terminal during his temporary relocation.

59. Bond performed the same duties as a yard driver at both the Alabama and Ohio terminals.

60. Bond was subject to the same overtime policies or practices at both the Alabama and Ohio terminals.

61. In September 2023, Bond returned to Carter Express's Vandalia, Ohio terminal.

62. Bond has worked in the same capacity as a yard driver ever since.

63. Bond generally works 47.5 hours per workweek.

64. Bond's hours worked are tracked in Carter Express's time keeping system.

65. Carter Express does not compensate Bond at the rate of one and one-half times his regular hourly rate for all hours over 40 in any workweek.

66. Within the last year, Bond has started to receive overtime payment only for hours worked over 45 hours in a workweek.

67. As a yard driver, Bond moved trailers around Carter Express's terminals.

68. In the performance of his employment duties, Bond drove a shunt truck exclusively on the campus of Carter Express's terminals.

69. Carter Express failed to pay Bond overtime wages as required by law.

### Collective Action Allegations

70. Bond brings the First Count on behalf of himself and all similarly situated current and former yard drivers employed at the Carter Express's terminals nationwide, during the three

8

years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

71.     At all relevant times, Bond and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Carter Express's decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Bond and the FLSA Collective wages at the correct overtime rate for all hours worked in excess of 40 hours in one workweek.

72.     Bond's claims are essentially the same as those of the FLSA Collective.

73.     Carter Express's unlawful conduct is pursuant to a company policy or practice.

74.     Carter Express is aware or should have been aware that federal law required them to pay employees overtime wages for all hours worked in excess of 40 hours in one workweek.

75.     Carter Express's unlawful conduct has been widespread, repeated, and consistent.

76.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

77.     The FLSA Collective members are readily identifiable and ascertainable.

78.     In recognition of the services Bond has rendered and will continue to render to the FLSA Collective, Bond will request payment of a service award upon resolution of this action.

## Class Action Allegations

79.     Bond brings the remaining causes of action under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Carter Express' terminal in the States of Ohio, Michigan, Kentucky, Indiana, Alabama, and Arkansas who worked for Carter Express during the time period relevant to this

9

lawsuit, as determined by reference to the applicable statute of limitations period in each state (the "Rule 23 Class").

80. The States of Ohio, Michigan, Kentucky, Indiana, Alabama, and Arkansas have wage laws that require employers to pay their non-exempt employees overtime at a 1.5× their "regular rate" of pay.

81. The States of Ohio, Michigan, Kentucky, Indiana, and Arkansas have wage laws that require employers to pay employees the wages that are due to them within certain time limitations.

82. Plaintiff has adequate standing to represent a class of delivery drivers who worked for Defendants in Michigan, Kentucky, Indiana, Alabama, and Arkansas.

83. Excluded from the Rule 23 Class are Carter Express's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Carter Express; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes

84. The number and identity of the Rule 23 Class are ascertainable from Carter Express's records.

85. The hours assigned and worked, the positions held, the rates of pay, and wages paid for each Rule 23 Class Member are determinable from Carter Express's records.

86. All of the records relevant to the claims of Rule 23 Class Members should be found in Carter Express's records.

87. For the purpose of notice and other purposes related to this action, Rule 23 Class Members' names and contact information are readily available from Carter Express.

88. Notice can be provided by means permissible under Rule 23.

89. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

90. Bond's claims are typical of those claims which could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Class in separate actions.

91. Bond and the members in the Rule 23 Class are subject to the same corporate practices of Carter Express, as alleged herein, of failing to pay time and a half overtime wages for hours worked over 40 in a given workweek.

92. Bond and the members in the Rule 23 Class are subject to the same corporate practices of Carter Express, as alleged herein, of failing to pay all wages due to the yard drivers at least semimonthly.

93. Bond and the members in the Rule 23 Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

94. Bond is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the members in the Rule 23 Class.

95. Bond is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

96. A class action is superior to other available procedural methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of hourly employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a

large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

97. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

98. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Bond and the Rule 23 Class members individually and include, but are not limited to:

   a. Whether Bond and the Rule 23 Class Members are subject to the same or similar job duties and compensation policies;

   b. Whether Bond and the Rule 23 Class Members are exempt from state law overtime requirements;

   c. Whether Bond and the Rule 23 Class members are subject to a common policy that did not pay them 1.5x their hourly rate for all hours worked in excess of 40, as required by the FLSA and state wage and hour law;

   d. Whether failing to pay Bond and the Rule 23 Class members all wages due under the FLSA and state wage and hour law resulted in Carter Express' failure to pay all wages due in a timely manner;

   e. Whether the wages due to Bond and the Rule 23 Class members were "in dispute" at the time they were withheld;

   f. Whether Carter Express's violations are willful;

   g. The nature and extent of classwide damages.

99. In recognition of the services Bond has rendered and will continue to render to the Rule 23 Class, Bond will request payment of a service award upon resolution of this action.

**CAUSES OF ACTION**

<u>**Count 1**</u>
**Failure to Pay Overtime Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

100. Bond restates and incorporates the foregoing allegations as if fully rewritten herein.

101. Bond and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than 1.5x their regular rate of wages for all hours worked in excess of 40 hours in any single workweek.

102. Carter Express did not pay Bond and the FLSA Collective overtime wages for all hours worked in excess of 40 hours per workweek.

103. By the acts and conduct described above, Carter Express willfully violated the provisions of the FLSA, and disregarded the rights of Bond and the FLSA Collective.

104. Bond and the FLSA Collective have been damaged by Carter Express' willful failure to pay overtime wages as required by law.

105. As a result of Carter Express' willful violations, Bond and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees under the FLSA.

### Count 2
### Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act
### (On Behalf of Plaintiff and the Rule 23 Class)

106. Plaintiff Raymond Bond restates and incorporates the foregoing allegations as if fully rewritten herein.

107. During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Raymond Bond and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

108. Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

109. Defendants did not pay Plaintiff and the Rule 23 Ohio Wage Class one- and one-half times their regular rate for hours worked in excess of forty hours in a workweek.

110. By not paying Plaintiff and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the Ohio Minimum Far Wage Standards Act, O.R.C. §4111.01.

### Count 3
### Untimely Payment of Wages – O.R.C. § 4111.15
### (On Behalf of Plaintiff and the Rule 23 Class)

111. Bond restates and incorporates the foregoing allegations as if fully rewritten herein.

112. During all relevant times, Carter Express was covered by O.R.C. § 4113.15, and Bond and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

113. O.R.C. § 4113.15(A) requires that Carter Express pay Bond and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

114. Ohio wage and hour law requires Carter Express to pay nonexempt employees 1.5x the employee's wage rate for all hours worked in excess of 40 hours in one workweek. Ohio Rev. Code § 4111.03.

115. By failing to pay Bond and the Rule 23 Class all wages due to them under the FLSA and Ohio wage and hour laws, Carter Express has violated the Ohio Prompt Pay Act.

116. Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

117. Bond's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

118. As a result of Carter Express' willful violation, Bond and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

### Count 4
### Damages Pursuant to O.R.C. § 2307.60
### (On Behalf of Plaintiff and the Rule 23 Class)

119. Bond restates and incorporates the foregoing allegations as if fully rewritten herein.

120. A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

121. A violation of the PPA is a criminal act. Ohio Rev. Code § 4113.99.

122. By their acts and omissions described herein, Carter Express has willfully violated the FLSA and violated the PPA, and Bond and the Rule 23 Class have been injured as a result.

123. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

124. As a result of Carter Express' willful violations of the FLSA, Bond and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiff Raymond Bond prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Bond and his counsel to represent the collective action members.

B. Unpaid wages and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Bond as representative of the Rule 23 Class, and counsel of record as Class Counsel.

E. Declaratory judgment that the practices complained of herein are unlawful under the Fair Labor Standards Act.

F. An award of unpaid overtime wages and untimely paid wages due under the FLSA, the OMFWSA, the PPA, and any similar state law.

G. Liquidated damages under the FLSA and the PPA.

H. An award of prejudgment and post-judgment interest.

I. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Andrew Kimble*
Andrew Kimble
